THE STATE, EX REL. LENTZ, *v.* DEPUE ET AL., SOLDIERS' RELIEF COMM.

(No. 210—Decided June 16, 1941.)

*Mr. Ben Neidlinger,* for relator.
*Mr. George W. Slaughter,* prosecuting attorney, for respondents.

OVERMYER, J.   On May 26, 1941, relator filed a petition in this court seeking a writ of mandamus against the respondents, who constitute the Soldiers' Relief ·

Commission of Ottawa county, Ohio, to require that commission to certify relator's name to the county auditor for relief in the sum of $25 per month for the period from December 1936 to May 1938, inclusive, and direct the auditor to issue a warrant upon the treasurer of the county therefor.

A demurrer to the petition has been filed by the respondents upon the grounds that the court has no jurisdiction of the subject of the action, and that the petition does not state a cause of action. The cause has been heard on the demurrer and submitted.

From the petition we learn that relator is an honorably discharged soldier of the Regular Army of the United States, is married and has several children. It is alleged that he and his wife, because of ill health, are unable to earn a livelihood; that for some six years prior to 1936 relator and family received relief by the consideration of the Soldiers' Relief Commission of the county; and that on December 10, 1936, his relief of $25 per month was discontinued at the order of the commission, upon the sole ground that relator had no longer a legal settlement in Ottawa county, Ohio, and upon no other ground. In May 1938 the respondents again restored relator to the relief rolls and awarded him $25 per month relief, which he has since and is now receiving. He alleges a continued legal settlement and residence in Ottawa county during the period here involved.

Sections 2930 to 2941, General Code, provide for the creation and organization of a "Soldiers' Relief Commission" in each county of the state, and define its powers and duties and provide for the appointment of township and ward committees. Section 2936, General Code, provides that on the last Monday in May

annually the county commission, having before it the lists of persons entitled to relief submitted by the township or ward relief committees for the various townships and city wards, as provided in Section 2935, General Code, shall meet and determine from such lists the probable amount necessary for the aid and relief of such persons for the ensuing year, etc., and shall certify such amount to the county commissioners, who, at their June session, shall make the levy necessary to raise the amount required, etc. Section 2937, General Code, directs the commission to hold its annual meeting on the fourth Monday of November each year, and at other times if necessary, examine the lists furnished by the township and ward committees, determine who shall be paid the relief and in what amount.

It is seen, therefore, that, first, the commission determines who shall receive the relief each year; and in what amount; second, they must certify to the county commissioners how much money will be required for relief during the ensuing year; and, third, Section 2937, General Code, provides the commission must be "satisfied that those so recommended, or any of them are in need of assistance and are entitled thereto under these provisions."

The latter part of Section 2939, General Code, provides that upon the recommendation of a township or ward committee, the commission, at any meeting, may *increase, decrease or discontinue* any allowance theretofore awarded, which action shall be certified to the county auditor and he shall amend his list accordingly.

The securing of the relief provided for in these statutes is not just a matter of asking for it. It is a matter at all times within the discretion and control of the

commission and the person awarded such relief has no vested right in a continuation of awards nor in any specific amount of award. It must be provided for in advance annually so that a levy may be made to provide the funds. The statutes do authorize relief in emergency cases, even though such applicant was not reported and included in the lists furnished by a township or ward committee or certified to the auditor by the commission, but again, such emergency relief is within the sole jurisdiction of the commission. Even if relator were now *ex post facto* entitled to relief for the period four years ago, how could this court or any court order the commission to make it $25 per month, or any definite sum? This is the amount this court is asked to order paid.

The relator knew, in December 1936, that he had been denied further relief and his name dropped from the list for award thereof. So far as the petition shows, he took no action to test his right to continued award, but waited until May 26, 1941, a period of four and one-half years, to assert his alleged right thereto. In the meantime the commission was functioning and making its annual certification of needs to the county commissioners, excluding any award to relator, and, while he was restored to the lists in May 1938, he now seeks an award for the period when it was denied him and he apparently acquiesced in such denial. How, indeed, could even the commission now determine what his needs were four years ago, especially when the petition indicates that the respondents were not then on the commission?

It is to be remembered also that by the tax-levying statutes, particularly Section 5625-32, General Code, unencumbered balances of various public funds ap-

propriated, at the close of each fiscal year, revert to the respective funds from which they were originally appropriated, which, so far. as shown, occurred with relief funds annually under the control of the commission. There is no allegation in the petition that funds are available out of which to pay relator any sum for the period claimed.

Relator cites *State, ex rel. Price,* v. *Huwe,* 103 Ohio St., 546, 134 N. E., 456. That action in mandamus was brought to compel payment by Hamilton county of certain sums owing for support of that county's inmates in the state institution for feeble-minded youth, under a statute which provides:

"The county from which an inmate of the institution for the feeble-minded was committed shall be liable for such inmate's support, provided the same is not paid otherwise as provided by this act. * * * " (Section 1815-12, General Code).

He also cites from 38 Corpus Juris, 745, the following:

"Where a positive duty is imposed by law on municipal boards or officers in respect of paupers, mandamus lies to compel the performance of such duty," to which we add the further quotation from that authority, to wit: "And where they are vested with discretion in such matters, they may be compelled to exercise such discretion, although the manner of its exercise will not be controlled by mandamus * * * ."

If these cases were applicable here, which they are not, it would certainly be contemplated that the remedy to be employed must be invoked with due diligence so that the board or commission or officers could comply, if so ordered, in cases such as here where they deter-

mine the amount to be awarded, within the periods when funds are to be supplied for the purpose.

Cases are also cited as to pensions of various kinds, but the relief provided for under the statutes here being considered does not constitute a pension. It is what the statute designates it to be, to wit, relief to the "needy soldiers, sailors and marines, and of their needy parents, wives, widows and minor children," etc. (Section 2934, General Code), a temporary, changing, fluctuating gratuity to be awarded under the control and discretion of the commission created by the act. See *State, ex rel. Foster,* v. *Miller,* 136 Ohio St., 295, 25 N. E. (2d), 686.

The petition does not state a cause of action and the demurrer thereto will be sustained, and relator will be granted fifteen days from date of entry to amend; on failure, judgment will be entered dismissing the petition at relator's costs.

*Demurrer sustained.*

LLOYD and CARPENTER, JJ., concur.