[Cite as *Professionals Guild of Ohio v. Lucas Cty. Corr. Facility*, 2019-Ohio-2522.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Professionals Guild of Ohio, | : | |
| Appellant-Appellant, | : | No. 17AP-885 |
| | | (C.P.C. No. 17CV-6612) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Lucas County Correctional Treatment Facility Governing Board et al., | : | |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on June 25, 2019

**On brief**: *James E. Melle*, for appellant. **Argued**: *James E. Melle*.

**On brief**: *Julia R. Bates* and *Elaine B. Szuch*, for Lucas County Correctional Treatment Facility Governing Board. **Argued**: *Elaine B. Szuch*.

**On brief**: *Dave Yost*, Attorney General, and *Michael D. Allen*, for State Employment Relations Board. **Argued**: *Tracy M. Nave*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by appellant, Professionals Guild of Ohio, from a judgment of the Franklin County Court of Common Pleas affirming a directive of appellee, State Employment Relations Board ("SERB"), which granted a motion filed by appellee, Lucas County Correctional Treatment Facility Governing Board (hereafter "Lucas County" or "the board"), to dismiss appellant's notice to negotiate.

{¶ 2}   The following background facts, essentially not in dispute, are drawn primarily from the trial court's decision and entry filed December 14, 2017.  From 1999 until 2007, appellant and the Lucas County Court of Common Pleas (hereafter "the common pleas court") had a "voluntary relationship" with regard to correction officers employed by the common pleas court's community based correctional facility ("CBCF").  (Dec. 14, 2017 Decision & Entry at 2.)  On October 12, 2006, the Ohio General Assembly enacted Am.Sub.H.B. No. 162 ("H.B. 162"), which "made a county, instead of a court of common pleas, eligible to establish a CBCF."  (Dec. 14, 2017 Decision & Entry at 2.)  H.B. 162 also "eliminated judicial corrections boards and gave the functions previously held by them, including employment matters, to the new facility governing boards."  (Dec. 14, 2017 Decision & Entry at 2.)  Lucas County "established such a governing board" to assume responsibility for the CBCF.  (Dec. 14, 2017 Decision & Entry at 2.)

{¶ 3}   With the enactment of H.B. 162, the General Assembly amended R.C. 4117.01(C) to provide in part:

> "Public employee" means any person holding a position by appointment or employment in the service of a public employer, * * * except:
>
> * * *
>
> (18) Employees of community-based correctional facilities and district community-based correctional facilities created under sections 2301.51 to 2301.58 of the Revised Code who are not subject to a collective bargaining agreement on June 1, 2005.

{¶ 4}   The 2006 legislation included an uncodified provision, Section 4 of H.B. 162, which stated as follows:

> The amendment of section 4117.01 of the Revised Code by this act preserves the nonexempt collective bargaining status of employees of community-based correctional facilities and programs and district community-based correctional facilities and programs who are covered by a collective bargaining agreement existing on June 1, 2005.  These employees shall maintain their non-exempt status beyond the termination date of the existing collective bargaining agreement.  All employees of community-based correctional facilities and programs and district community-based correctional facilities and programs who are not covered by a collective bargaining

agreement on June 1, 2005, shall be exempt from collective bargaining rights under Chapter 4117. of the Revised Code.

{¶ 5} At the time of the enactment of H.B. 162, Lucas County apparently "had the only CBCF" covered by a collective bargaining agreement ("CBA"). (Dec. 14, 2017 Decision & Entry at 2.) Prior to the enactment of H.B. 162 and the corresponding amendment to R.C. 4117.01(C), the common pleas court and appellant "treated corrections officers employed by [the board] as being excluded from the definition of 'public employees' under the exception for court employees" codified in R.C. 4117.01(C)(18). (Dec. 14, 2017 Decision & Entry at 2.)

{¶ 6} With the enactment of H.B. 162 and R.C. 4117.01(C)(18), appellant filed a request for recognition with SERB. At that time, SERB "found that the employees were 'public employees' under [R.C.] 4117.01(C)(18) as amended, since the parties had been subject to a collective bargaining agreement on June 1, 2005." (Dec. 14, 2017 Decision & Entry at 3.) Accordingly, SERB "ordered a Direction to Election." (Dec. 14, 2017 Decision & Entry at 3.) On November 28, 2008, appellant was certified as the exclusive representative of corrections officers employed by the board. Appellant and the board "have continued to be parties to a collective bargaining agreement ever since," and "[t]he most recent agreement expired on June 30, 2017." (Dec. 14, 2017 Decision & Entry at 3.)

{¶ 7} On June 30, 2015, the General Assembly enacted Am.Sub.H.B. No. 64 ("H.B. 64"), which amended R.C. 4117.01(C) to provide as follows:

> "Public employee" means any person holding a position by appointment or employment in the service of a public employer, * * * except:
>
> (17) Employees of community-based correctional facilities and district community-based correctional facilities created under sections 2301.51 to 2301.58 of the Revised Code.

{¶ 8} On March 27, 2017, appellant filed with SERB a notice to negotiate with the board regarding employees of the Lucas County Correctional Treatment Facility ("Lucas County CTF"). On May 26, 2017, the board filed a motion to dismiss appellant's notice to negotiate. On July 25, 2017, SERB issued a directive granting the board's motion to dismiss appellant's notice to negotiate. The directive by SERB stated in part:

In this case, a ruling for the Union would run contra to the plain language of an unambiguous statute and would also ignore clear legislative intent to remove the grandfather clause from § 4117.01 (C)(17). Uncodified law is, by nature, limited in scope and duration. While some uncodified laws are longstanding and govern with great power (e.g., the uncodified law that provides for deemed certified bargaining units), [Section 4]'s weight of authority appears to be greatly diminished by the clear meaning of the statute on point and the legislative intent to exempt all CBCF employees from collective bargaining rights.

{¶ 9}    SERB further held it did not have subject-matter jurisdiction to determine the issue of the constitutionality of H.B. 64.  Appellant filed an appeal with the trial court from SERB's directive, pursuant to R.C. 119.12 and 4117.02(P), and the parties subsequently submitted briefs to the court.  On December 14, 2017, the trial court filed a decision and entry affirming SERB's directive based on the court's determination that SERB correctly found R.C. 4117.01(C)(17) "was controlling."  (Dec. 14, 2017 Decision & Entry at 8.)  The trial court further rejected appellant's contention that the amendment to R.C. 4117.01(C) in H.B. 64 violated the one-subject rule of the Ohio Constitution.

{¶ 10} On appeal, appellant sets forth the following four assignments of error for this court's review:

> I. The Common Pleas Court erred in affirming the directive of the State Employment Relations Board because it was not supported by reliable, probative and substantial evidence and was not in accordance with law.
>
> II. The Common Pleas Court erred to the prejudice of Appellant in finding and concluding that the amendment to R.C. 4117.01(C)(17) in Am.Sub.H.B. 64 and Section 4 of Am.Sub.H.B. No. 162 were in conflict and the conflict was irreconcilable.
>
> III. The Common Pleas Court erred in finding that the amendment to R.C. 4117.01(C)(17) in Am.Sub.H.B. No. 64 did not violate the One Subject Rule in Article II, Section 15(D) of the Ohio Constitution.
>
> IV. The Common Pleas Court erred to the prejudice of Appellant in failing to find and order that Appellant's Motion to Compel Bargaining according to the obligations in O.R.C. Chapter 4117 be granted.

{¶ 11} Appellant's assignments of error are interrelated and will be considered together.  Under these assignments of error, appellant contends the trial court erred in: (1) affirming the directive of SERB because it was not supported by reliable, probative and substantial evidence and was not in accordance with law, (2) concluding that Section 4 of H.B. 162 and the amendment to R.C. 4117.01(C)(17) made by H.B. 64 were in irreconcilable conflict, (3) finding that the amendment to R.C. 4117.01(C)(17) did not violate the one-subject rule in Article II, Section 15(D) of the Ohio Constitution, and (4) failing to grant appellant's motion to compel bargaining in accordance with R.C. Chapter 4117.

{¶ 12} A trial court, in considering an appeal under R.C. 119.12, "reviews an administrative order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with law." *Benevolent Emps. v. State Emp. Relations Bd.,* 10th Dist. No. 12AP-377, 2012-Ohio-5905, ¶ 28.  In reviewing a trial court's determination that "the board's order was supported by reliable, probative and substantial evidence, this court's role is limited to determining whether the trial court abused its discretion." *Id.* at ¶ 29.  However, regarding the issue of "whether the board's order was in accordance with law, this court exercises plenary review." *Id.*  In this respect, "[a] question of statutory construction presents an issue of law that we determine de novo on appeal." *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12, citing *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, ¶ 8, citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 8.

{¶ 13} In general, "[t]he goal of statutory construction is to ascertain and give effect to the General Assembly's intent." *Toledo v. Corr. Comm. of Northwest Ohio,* 6th Dist. No. L-16-1155, 2017-Ohio-9149, ¶ 22.  In determining such intent, "courts first look to the statutory language and the purpose to be accomplished," and "[w]hen a statute's meaning is clear and unambiguous, courts apply the statute as written." *Id.*  Thus, "[i]n such a situation, courts have no basis for resorting to rules of statutory interpretation, as an unambiguous statute is to be applied, not interpreted." *Id.*  If, on the other hand, "a statute is ambiguous, ' "courts seek to interpret the statutory provision in a manner that most readily furthers the legislative purpose as reflected in the wording used in the

legislation." ' " *Id.,* quoting *State v. Black,* 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 38, quoting *State ex rel. Toledo Edison Co. v. Clyde,* 76 Ohio St.3d 508 (1996).

{¶ 14} The Supreme Court of Ohio has recognized that courts are to "accord due deference to SERB's interpretation of R.C. Chapter 4117. Otherwise, there would be no purpose in creating a specialized administrative agency, such as SERB, to make determinations." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.,* 40 Ohio St.3d 257, 260 (1988).

{¶ 15} In challenging the trial court's affirmance of SERB's order, appellant argues the trial court erred in "seemingly" ruling that the amended version of R.C. 4117.01(C)(17) was irreconcilable with the former version of R.C. 4117.01(C). (Appellant's Brief at 14.) According to appellant, the trial court's analysis should have been based on a comparison of the language of amended R.C. 4117.01(C)(17) with the language of Section 4 of H.B. 162. In response, SERB and the board argue the clear statutory language of R.C. 4117.01(C)(17) excludes from the definition of "public employee" any employees of CBCFs.

{¶ 16} As set forth under the facts, in 2006, the legislature, through the enactment of H.B. 162, amended R.C. 4117.01(C)(18) to define "[p]ublic employee" to mean, in part, "any person holding a position by appointment or employment in the service of a public employer * * * except * * * [e]mployees of community-based correctional facilities and district community-based correctional facilities created under sections 2301.51 to 2301.58 of the Revised Code *who are not subject to a collective bargaining agreement on June 1, 2005.*" (Emphasis added.) In 2015, the General Assembly enacted H.B. 64, which amended R.C. 4117.01(C)(17) to define public employee to mean, in part, "any person holding a position by appointment or employment in the service of a public employer * * * except * * * [e]mployees of community-based correctional facilities and district community-based correctional facilities created under sections 2301.51 to 2301.58 of the Revised Code." Thus, by the enactment of H.B. 64, the above italicized language (i.e., "who are not subject to a collective bargaining agreement on June 1, 2005") was deleted from R.C. 4117.01(C).

{¶ 17} On review, we agree with the board and SERB that the language of R.C. 4117.01(C)(17) is plain and unambiguous. By its terms, the statute excludes employees of CBCFs from the definition of public employee for purposes of collective bargaining in the

public sector. Further, as noted by SERB, interpreting current R.C. 4117.01(C) as not applying to appellant's members because they were a party to a collective bargaining agreement on June 1, 2005 would require adding words to the statute that no longer exist.

{¶ 18} It is presumed the legislature was aware of the existing law when it amended R.C. 4117.01(C). *See, e.g., Harris v. J.A. Schultz & Son,* 6th Dist. No. WD-86-81 (July 17, 1987) ("the legislature is presumed to be aware of existing statutes and to know the status of the law relating to the subjects with which it is dealing"); *Lytle v. Baldinger,* 84 Ohio St. 1, 8 (1911) (presumption exists "that every amendment of a statute is made to effect some purpose"). A similar presumption arises when the legislature amends a statute by deleting language from the prior version. *See State ex rel. Kelly v. Judges of Cleveland Municipal Court,* 1 Ohio App.2d 558, 563 (8th Dist.1965) (amendment of statute deleting language raised presumption that legislature "intended to change the effect and operation of the law to the extent of the change in the language of the statute"). Here, it is presumed the legislature, by deleting the words "who are not subject to a collective bargaining agreement on June 1, 2005," intended to change the existing law such that the omitted provision was no longer effective.

{¶ 19} As indicated, in support of its position, appellant relies on a provision in the uncodified law (i.e., Section 4 of H.B. 162), which explained that the amendment to R.C. 4117.01 (effective October 12, 2006) "preserves the nonexempt collective bargaining status of employees of community-based correctional facilities * * * who are covered by a collective bargaining agreement existing on June 1, 2005." According to appellant, H.B. 64, which amended R.C. 4117.01(C) in 2015, did not repeal, amend or change uncodified Section 4.

{¶ 20} Under Ohio law, "uncodified law is '[l]aw of a special nature that has a limited duration or operation and is not assigned a permanent Ohio Revised Code section number.' " *Maynard v. Eaton Corp.,* 119 Ohio St.3d 443, 2008-Ohio-4542, ¶ 7, quoting A Guidebook for Ohio Legislators, 145 (10th Ed.2007-08). Because uncodified law " 'is not a law of a general and permanent nature, it does not appear in the statutes in codified form.' " *Id.* Uncodified law is "occasionally called a temporary law." *Id.* Further, "[w]hile uncodified law is 'part of the law of Ohio,' it should not be used to displace statutory

language where the meaning of the statute is clear." *First Natl. Bank of Pennsylvania v. Jones,* 11th Dist. No. 2013-T-0083, 2014-Ohio-746, ¶ 22.

{¶ 21} As noted, while Section 4 provided explanation regarding the amendment in H.B. 162 of R.C. 4117.01 (i.e., that employees subject to a CBA existing on June 1, 2005 "shall maintain their non-exempt status beyond the termination date of the existing collective bargaining agreement"), we do not find persuasive appellant's argument that this uncodified provision remains operative in light of the plain language of R.C. 4117.01(C)(17), as amended in H.B. 64. Rather, because the language of R.C. 4117.01(C)(17) is unambiguous, we decline to look to uncodified Section 4 to alter that meaning. Accordingly, the trial court did not err in affirming the directive of SERB on the basis that the language of R.C. 4117.01(C)(17) "was controlling."

{¶ 22} We note, as an aside, while this court's affirmance of SERB's interpretation of R.C. 4117.01(C)(17) necessarily resolves the dispositive issue of whether Lucas County (as a public employer) is mandatorily required to collectively bargain with employees of a CBCF, nothing in our decision should be construed as addressing (and/or foreclosing) the right of the parties to voluntarily agree to collectively bargain in the future.[1]

{¶ 23} Appellant further contends the amendment to R.C. 4117.01(C)(17) in an appropriations bill (H.B. 64) is violative of the single-subject rule of Article II, Section 15(D) of the Ohio Constitution. According to appellant, the amendment has nothing to do with expending funds and was buried among numerous unrelated provisions, thereby displaying the hallmarks of logrolling. In support, appellant relies in part on *State ex rel. Ohio Civil Serv. Emps. Assn. Local 11 v. State Emp. Relations Bd.,* 104 Ohio St.3d 122, 2004-Ohio-6363, ¶ 36 (holding that amendment to R.C. 3318.31, excluding certain employees from collective bargaining process, violated one-subject rule where there was disunity between challenged provision and budget-related items of bill).

{¶ 24} In response, the board contends there is a direct link between the amendment at issue and the budgetary process; specifically, the board maintains the Lucas County CTF is unique, being the only CBCF in the state that could be subject to the change in the statute (i.e., the only CBCF subject to a CBA on June 1, 2005). The board

---

[1] As previously noted under the facts, appellant and Lucas County (formerly the common pleas court) initiated a "voluntary relationship" with respect to corrections officers employed by the CBCF beginning in 1999, and appellant and Lucas County have continued to be parties to a CBA since that time.

notes that the overall budget allocation for CBCFs statewide is set by the state legislature, and earmarked funds are then allocated to the Ohio Department of Rehabilitation and Correction which, in its sole discretion, determines the dollar amounts to be appropriated to each of the CBCF programs.  According to the board, because the Lucas County CTF budget is dependent on the state budget, in accordance with R.C. 2301.56, legislation relating to employee conditions, wages, operations and other pertinent matters regarding employees of the Lucas County CTF necessarily impacts the state budget as a whole and, therefore, the amendment was correctly included in an appropriations bill.

{¶ 25} In its response to appellant's constitutional challenge, SERB argues there is no disunity within H.B. 64, and the legislature had a legitimate reason for combining provisions that affect R.C. Chapter 4117 and collective bargaining in the legislation.  SERB notes the amendment to R.C. 4117.01(C) was not the only revision in the legislation affecting R.C. Chapter 4117 or collective bargaining rights; specifically, SERB observes, H.B. 64 also amended R.C. 4117.10(A), clarifying which laws prevail over conflicting provisions of agreements between employee organizations and public employers, and the bill added R.C. 3319.113, a provision affecting collective bargaining rights of public school employees.

{¶ 26} Article II, Section 15(D) of the Ohio Constitution, states in part: "No bill shall contain more than one subject, which shall be clearly expressed in its title."  The Supreme Court of Ohio as held that the purpose of the one-subject rule "is to prevent logrolling, which occurs when legislators combine disharmonious proposals in a single bill to ensure passage of proposals that might not have won acceptance on their own."  *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State,* 146 Ohio St.3d 315, 2016-Ohio-478, ¶ 15, citing *State ex rel. Dix v. Celeste,* 11 Ohio St.3d 141, 142-43 (1984).

{¶ 27} Although the Supreme Court has "described the one-subject rule as mandatory," it has noted that its role in enforcement of the rule "remains limited."  *Id.* at ¶ 16.  Further, "[t]he one-subject rule does not prohibit a plurality of topics, only a disunity of subjects."  *Id.* at ¶ 17.  Thus, "[t]he mere fact that a bill embraces more than one topic is not fatal as long as a common purpose or relationship exists between the topics."  *Id.*  The Supreme Court has made clear it will "invalidate statutes as violating the one-subject rule only when they contain 'a manifestly gross and fraudulent violation.' "

*Id.,* quoting *Dix* at 145.   Accordingly, "[o]nly when there is no practical, rational or legitimate reason for combining provisions in one act will we find a one-subject-rule violation."  *Id.*  The Supreme Court has cautioned that "[a]pplication of the one-subject rule is more difficult when the challenged provision is part of an appropriations bill."  *Id.* at ¶ 18.  In this respect, the Supreme Court has recognized that "[b]iennial appropriations bills, which fund the state's programs and departments, necessarily address wide-ranging topics and bring unique challenges for judicial review."  *Id.*

{¶ 28} In the present case, the trial court addressed the constitutional issue and found no manifestly gross and fraudulent violation of the one-subject rule, nor evidence of logrolling.  On review, we find no error with that determination.

{¶ 29} In general, we agree with the board that the issue of whether Lucas County is subject to mandatory collective bargaining (and attendant matters pertaining to employee wages, hours, working conditions, etc.) implicates budgetary and appropriation processes, thereby impacting the overall Lucas County CTF budget.   In this respect, county budgeting processes "are necessarily affected by overall state appropriations." *Cuyahoga Cty. Veterans Servs. Comm. v. State,* 159 Ohio App.3d 276, 2004-Ohio-6124, ¶ 14 (10th Dist.).  We therefore find the amendment at issue to be sufficiently related to funding and the budgeting process so as to justify inclusion in an appropriations bill.

{¶ 30} We also find no blatant disunity of topics, and conclude there is a legitimate basis for combining provisions affecting R.C. Chapter 4117 and collective bargaining rights in the bill.   As noted by SERB, H.B. 64 not only amended R.C. 4117.01(C)(17), but included amendments to R.C. 4117.10 (delineating the relationship between provisions of a CBA and applicable state and local laws).   In addition, the bill contained other provisions related to collective bargaining, including R.C. 4113.81 (prohibiting the state from engaging in collective bargaining with individuals excluded from coverage under R.C. Chapter 4117 and the National Labor Relations Act), as well as R.C. 3319.113(F) (which included language providing that "[n]otwithstanding any provision to the contrary in [R.C.] Chapter 4117," requirements for school counselor evaluations "prevail over any conflicting provision of a collective bargaining agreement entered into on or after September 29, 2015").

{¶ 31} Under Ohio law, "when an enactment of the General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality." *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas,* 9 Ohio St.2d 159, 161 (1967).  Here, we agree with the trial court that the amendment to R.C. 4117.01(C) in H.B. 64 does not constitute a manifestly gross and fraudulent violation of the one-subject rule. Thus, the trial court did not err in rejecting appellant's constitutional challenge under Article II, Section 15(D), of the Ohio Constitution.

{¶ 32} Based on the foregoing, the trial court did not err in affirming the directive of SERB granting the board's motion to dismiss appellant's notice to negotiate. Accordingly, appellant's four assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

_____